**Shirley Elizabeth McCOY, Plaintiff in Error,**

v.

**Alexander Watts McCOY, III, Defendant in Error.**

**No. 40557.**

Supreme Court of Oklahoma.

April 4, 1967.

Supplemental Opinion on Rehearing July 18, 1967.

Rehearing Denied July 18, 1967.

John S. Carlson, John B. Johnson, Jr., G. C. Spillers, Jr., Tulsa, for plaintiff in error.

Joe Francis, Dyer, Powers, Gotcher & Marsh, Tulsa, for defendant in error.

PER CURIAM.

This appeal involves a divorce action which was commenced on September 10, 1962 by the plaintiff in error, Shirley Elizabeth McCoy, hereinafter called the plaintiff, in which the defendant in error, Alexander Watts McCoy III, hereinafter called the defendant, filed an answer and a cross-petition for a divorce from the plaintiff. After a trial, commenced on February 20, 1963 and lasting some four-teen days, the trial court took the matter under advisement, and on April 29, 1963 rendered its judgment, which granted a divorce to each of the parties from the other on the ground of incompatibility, awarded to the plaintiff the custody of the two minor children of the marriage but subject to visitation by the defend-ant, required the defendant to pay to the plaintiff $100.00 per month for the sup-port of each of said two minor children during the minority of the child or until further order of the court, and made cer-tain orders concerning the property of the parties, alimony to the plaintiff, an attor-neys' fee for plaintiff's attorneys, and the court costs of the proceeding.

The plaintiff filed a motion for a new trial and, after the same had been over-ruled by the trial court, perfected this ap-peal to this court. She raises no question concerning the divorces to both parties or the custody of the minor children of the parties or support money for them or the court costs of the action, but presents her appeal upon two basic propositions: First, that the trial court erred in making an in-adequate award to the plaintiff of alimony and/or division of jointly acquired prop-erty and by failing to restore plaintiff's separate property; and, second, that the trial court erred in awarding inadequate attorneys' fees and suit money to the plain-tiff.

Under her first proposition plaintiff con-tends, in effect, that under 12 O.S.1961, § 1278 and Oklahoma cases construing it, the trial court should have awarded her all of her separate property, free and clear of any and all encumbrances imposed there-on during the marriage, and at least one-half of the property acquired by the par-ties during the marriage, as well as ali-mony in an amount compatible with her way of life during the marriage and the defendant's true earning capacity. That statute provides that:

"When a divorce shall be granted by reason of the fault or aggression of the husband, the wife shall be restored to her

maiden name if she so desires, and also to all the property, lands, tenements, hereditaments owned by her before marriage or acquired by her in her own right after such marriage, and not previously disposed of, and shall be allowed such alimony out of the husband's real and personal property as the court shall think reasonable, having due regard to the value of his real and personal estate at the time of said divorce; which alimony may be allowed to her in real or personal property, or both, or by decreeing to her such sum of money, payable either in gross or in installments, as the court may deem just and equitable. As to such property, whether real or personal, as shall have been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall make such division between the parties respectively as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof. In case of a finding by the court, that such divorce should be granted on account of the fault or aggression of the wife, the court may set apart to the husband and for the support of the children, issue of the marriage, such portion of the wife's separate estate as may be proper."

However, in the present case, a divorce was not granted to only one of the parties by reason of the fault or aggression of the other party, but a divorce was granted to both parties on the ground of incompatibility. In Chappell v. Chappell, Okl., 298 P.2d 768, 771, 58 A.L.R.2d 1214, this court held that incompatibility is a "two-way proposition," and in the first and third paragraphs of its syllabus to Wegener v. Wegener, Okl., 365 P.2d 728, held that:

"Actionable incompatibility exists when there is such a conflict of personalities as to destroy the legitimate ends of matrimony and the possibility of reconciliation. Such a state may exist although the situation is considered serious by one spouse and less so by the other."
and,

"Where no misconduct of the complaining spouse exists, but the evidence discloses incompatibility, the trial court is not vested with the right to weigh the degree of fault contributed by the parties."

In the present case the finding of the trial court upon which the divorce was granted is in harmony with those rules. That finding, as set forth in the journal entry, is as follows:

"The Court further finds that both of the parties are at fault and that they are incompatible and that the incompatibility is caused by the actions of both parties and that said incompatibility existing during the marriage relationship has destroyed all of the legitimate aims and ends of matrimony and that both of the parties are entitled to a divorce each from the other."

Although 12 O.S.1961, § 1271 makes incompatibility one of the grounds for divorce, the authority for granting a divorce to both parties is contained in 12 O.S. 1961, § 1275, which provides, first, that:

"The parties appear to be in equal wrong shall not be a basis for refusing to grant a divorce, but if a divorce is granted in such circumstances, it shall be granted to both parties. * * *"
and then provides that:

"In any such case or where the court grants alimony without a divorce or in any case where a divorce is refused, the court may for good cause shown make such order as may be proper for the custody, maintenance and education of the children, and for the control and equitable division and disposition of the property of the parties, or of either of them, as may be proper, equitable and

just, having due regard to the time and manner of acquiring such property, whether the title thereto be in either or both of said parties."

Consequently, 12 O.S.1961, § 1275, supra, rather than 12 O.S.1961, § 1278, supra, relied upon by the plaintiff, applies in this instance.

This court has held that 12 O.S. 1961, § 1278, supra, when applicable, requires an "equitable division" of the parties' jointly acquired property. Bruce v. Bruce, 141 Okl. 160, 285 P. 30; Chamberlain v. Chamberlain, 121 Okl. 145, 247 P. 684. Thus, although not directly applicable in a case where a divorce is granted to both parties, cases involving the provisions of 12 O.S.1961, § 1278 concerning jointly acquired property would be of assistance in effecting an "equitable division and disposition" of all of the property of the parties, or of either of them, as required by 12 O.S.1961, § 1275, supra, when a divorce is granted to both parties. An "equitable division" of the jointly acquired property of the parties, under 12 O.S.1961, § 1278, does not require an equal division of the property. Carter v. Carter, 181 Okl. 204, 73 P.2d 404. What constitutes an "equitable division" of the parties' jointly acquired property under those provisions of 12 O.S.1961, § 1278 is to be determined from the circumstances surrounding the acquisition of the property and the conduct of the parties with relation thereto, and in making such determination a wide discretion is vested in the trial court. Turlington v. Turlington, 193 Okl. 421, 144 P.2d 957. And, before this court will reverse an order adjusting property rights in a divorce proceeding, it must clearly appear that the trial court abused its discretion. Allen v. Allen, Okl., 269 P.2d 772; Martin v. Martin, 206 Okl. 35, 240 P.2d 1057.

Plaintiff and defendant were married on July 1, 1956, and lived together as husband and wife for a period of six years, two months and nine days, until September 10, 1962, when the plaintiff commenced this action for divorce. During that period

of time four children of the plaintiff by a former marriage lived with them, and two children were born to the plaintiff and defendant.

At the time of the marriage, the plaintiff owned a home in Denver, Colorado, which was subject to a mortgage, 24,000 shares of stock of Stearns-Roger Mfg. Co., and some household furnishings and other personal property and had about $600.00 in the bank. She was receiving $600.00 per month from her parents, $600.00 per quarter-year as dividends on her Stearns-Roger stock, and some money as commissions on insurance that had been sold by her former husband. As of June 30, 1956, the day before the marriage, as shown by a balance sheet introduced in evidence by the defendant and not controverted by the plaintiff, she had total assets of $43,957.60, total liabilities of $7,500.00, and a net worth of $36,457.60.

At the time of the marriage, the defendant, a consulting geologist and engineer, owned all 5,000 shares of the corporate stock of Alex W. McCoy Associates, Inc. (which was a consulting geologists and engineering business), a share of stock of a country club, some oil royalties (some of which were producing income and some of which were not), and some household furnishings and other personal property, and had some money in the bank and other accounts receivable, and his income, chiefly from said corporation, was approximately $30,000.00 per year. He had been divorced and was making payments to his former wife, under the divorce decree, for alimony and support money for their minor children. As of June 30, 1956, as shown by a balance sheet introduced in evidence by the defendant, he had total assets of $143,-345.06 (including his Alex W. McCoy Associates stock valued therein at $105,128.00), total liabilities of $65,800.00, and a net worth of $77,545.06.

According to these balance sheets, the parties had as of the day before their marriage combined assets of $187,302.66,

combined liabilities of $73,300.00, and a combined net worth of $114,002.66.

However, the plaintiff introduced in evidence a copy of a balance sheet for Alex W. McCoy Associates, Inc., which had been attached to that company's income tax returns, showing lower values for some of the company's assets than were shown therefor in a balance sheet for the company as of June 30, 1956, introduced in evidence by the defendant to support the value of his stock in the company claimed in his personal balance sheet mentioned above, resulting in a net worth for the company of $390.58 being shown on this plaintiff's exhibit as opposed to the $105,-128.00 shown on the defendant's exhibit. Plaintiff contends that her exhibit shows the company's real net worth and the real value of the defendant's stock in the company, and that his assets and net worth must be reduced by the $104,737.42 difference, making his assets $38,607.64 and his net worth as of June 30, 1956 *minus* $27,-192.36. This view would, of course, result in a balance sheet for the parties as of June 30, 1956, showing combined assets of $82,565.24, combined liabilities of $73,000.00, and a combined net worth of $9,265.24.

Defendant's witnesses testified without contradiction that the corporation's balance sheet introduced by the plaintiff was prepared in support of the corporation's income tax return, which was on a cash basis rather than an accrual basis, and so would not include "accrual" as such shown on the corporation's balance sheet introduced by the defendant; and that the latter balance sheet was prepared in accordance with accepted accounting procedures and practices and more nearly reflected the assets and the true financial condition of the corporation than the plaintiff's exhibit.

After the marriage the plaintiff sold her Denver home for a net of $7,193.66, and her automobile for $1,000.00, and up to the date of filing this action received dividends on her Stearns-Roger stock totaling $14,400.00, insurance commissions totaling $4,328.14, and $600.00 per month gifts from her parents (which terminated in January of 1962) totaling $41,051.98, for a grand total of approximately $68,000.00, all of which appears to have been expended by the parties for family purposes as distinguished from personal expenses of the plaintiff.

In 1957 the parties built, furnished and moved into a new home in Tulsa. They also purchased and furnished a house in Tulsa as a home for the defendant's Aunt Lewise. At the time of the divorce both places were heavily mortgaged.

During the marriage the defendant sold 1,450 of the 5,000 shares of stock in Alex W. McCoy Associates to various of the associates, and at the time of the divorce held the remaining 3,550 shares or 71 per cent of the stock of that corporation.

From the time of the marriage, through the first eight months of 1962, the defendant's gross income from all sources was $526,421.56, and his net income (after deducting taxes, business expenses and alimony and child support paid to his former wife) was $378,129.52, for an annual average of $85,365.60 gross income and $61,-318.32 net income, with his gross income and net income for the last six months of 1956 (the first six months of the marriage) being $12,574.84 and $4,833.63, respectively, and his gross income and net income for the first eight months of 1962 (the last eight months of the marriage) being $154,848.66 and $132,488.66, respectively.

About 1960 the defendant organized and became the sole owner and manager of another corporation, Exploration Funds, Incorporated, which was capitalized at $1,-000.00 and which managed three separate oil and gas exploration and development "funds," known as "EFI–1960," "EFI–1961A," and "EFI–1962A," each of which funds was financed by the sale of "units" therein. Each of the units in a fund was to bear its proportionate part of the expenses of that fund, by assessment if necessary, and was to receive its proportionate part of the profits, if any, accruing to

that fund. The "EFI–1960" fund was divided into 100 units, of which two were purchased in the name of the plaintiff, 10 in the name of the defendant, and 10 in the name of Alex W. McCoy Associates. The "EFI–1961A" fund was divided into 61 units, of which two were purchased in the name of the plaintiff, three in the name of the defendant, and three in the name of Alex W. McCoy Associates. The "EFI–1962A" fund was divided into 84 units, of which two were purchased in the name of the plaintiff, three in the name of the defendant, and four in the name of Alex W. McCoy Associates. This corporate unit-holder performed or subcontracted for the performance of the actual drilling and development operations of the various funds and was to be paid therefor by the proper fund. At the time of the divorce, Alex W. McCoy Associates and the "EFI–1960" fund were heavily indebted in connection with such operations, with most, if not all, of the fund's indebtedness being owed to Alex W. McCoy Associates.

The operations of the "EFI–1961A" and "EFI–1962A" funds were financially unsuccessful, and the uncontroverted evidence is that at the time of the divorce each unit of the 1961 fund, which had cost $5,000.00 when purchased, had a value of $1,710.00, and each unit of the 1962 fund, which also had cost $5,000.00 when purchased, had a value of $1,145.00. The operations of the "EFI–1960" fund were successful in that oil and/or gas were discovered and produced from its holdings in Oklahoma and in Canada. There is some controversy as to the value of each unit of this 1960 fund at the time of the divorce apparently due, primarily if not entirely, to the difference in values of the fund's Canadian holdings when computed solely in U.S. dollars and when computed in Canadian dollars or partly in Canadian dollars and partly in U.S. dollars. However, the evidence as to the value computed solely in U.S. dollars was that at the time of the divorce each unit of the 1960 fund, which had

cost $5,000.00 when purchased, had a gross value of $9,244.00 and a net value of $7,-746.00.

A balance sheet for the defendant, personally, as of December 31, 1962 (less than two months prior to the commencement of the trial), identified as having been prepared on a "market value" basis, shows total assets of $172,936.89, total liabilities of $176,377.05, and a net worth of *minus* $3,440.16.

The balance sheet lists as assets cash on hand and in banks $307.32, net accrued salary $14,774.57, other accounts receivable $400.00, his 3,550 shares of Alex W. McCoy Associates stock valued at "none," 10 shares CAM Gas Co. $1,000.00 (at cost), 1,000 shares of Exploration Funds, Inc. stock $1,000.00 (at cost), one share of country club stock $3,500.00, 10 units of 1960 EFI fund $92,440.00, three units of 1961 EFI fund $5,130.00, three units of 1962 EFI fund $3,435.00, small royalty interests $450.00, "personal" property $3,-000.00, one-half interest in Aunt Lewise place $5,000.00, one-half interest in the parties' home at $37,500.00, and one-half interest in the household furnishings $5,-000.00. This balance sheet lists as liabilities, along with other liabilities, $22,341.-19 as one-half of the mortgage indebtedness against the parties' home, $4,163.70 as one-half of the mortgage indebtedness against the Aunt Lewise place, and $4,-250.00 as one-half of the unpaid principal of a loan from a Denver bank, secured by a pledge of the plaintiff's Stearns-Roger stock, which was made to help finance the parties' home when it was constructed.

To support the value of "none" assigned to his shares of Alex W. McCoy Associates stock in such balance sheet, the defendant introduced in evidence two balance sheets for that corporation as of December 31, 1962. One, based on "book value" as shown by the corporation's books, shows a net worth of *minus* $31,718.25 for the corporation; and the other one, based on "market value," shows a net worth of *minus* $83,366.86 for the corporation Ei–

ther one, of course, would support the "none" shown in the defendant's personal balance sheet as of the same date as the value of his 71 per cent of the stock of such corporation. The plaintiff introduced in evidence another balance sheet for the corporation as of the same date which is a copy of a financial statement of the corporation that was provided by the defendant to a Tulsa bank for the purpose of obtaining loans from the bank and which shows the net worth of the corporation as of that date as $380,252.29. The plaintiff contends that this financial statement must be taken as showing the true net worth of the corporation and the value of the stock thereof, which would increase by 71 per cent of that amount the defendant's assets and net worth as shown by his personal balance sheet of December 31, 1962, above mentioned, resulting in total assets of $442,916.02 and a net worth of $266,538.97. A witness for the defendant testified that such financial statement had been prepared before the corporation's books had been audited and closed and was based in part upon book value and in part upon market value.

In its journal entry of judgment and in its separate findings of fact and conclusions of law, the trial court found that the defendant at the time of the trial was nearly insolvent. This finding is completely contrary to the plaintiff's theory concerning the net worth of the defendant at the time of the trial but is not clearly against the weight of the evidence. Therefore, for the present purpose, we shall accept the balance sheet for December 31, 1962 offered by the defendant as showing his financial condition and net worth as of that date. And since the trial court did not find that the defendant was insolvent, or nearly insolvent, at the time of the marriage of the parties, but did find that the parties during their marriage had wasted the defendant's assets, we shall for the present purpose accept the balance sheet for June 30, 1956, offered by the defendant showing a net worth of $77,545.06.

No balance sheet for the plaintiff as of December 31, 1962 appears in the record, but such a balance sheet would include, at the same values used in the defendant's balance sheet for that date, a one-half interest in the parties' home, its furnishings, and the Aunt Lewise place at $37,500.00, $5,000.00 and $5,000.00, respectively, and her two units each in the 1960, 1961 and 1962 EFI funds at $18,488.00, $3,420.00 and $2,290.00, respectively, as well as her 2,400 shares of Stearns-Roger stock at $24,000.00, for total assets of $95,698.00. Her liabilities, as of the same date, would, of course, include $22,341.19 as one-half of the mortgage indebtedness against the home place, $4,163.70 as one-half of the mortgage indebtedness against the Aunt Lewise place, and $4,250.00 as one-half of the parties' indebtedness to the Denver bank secured by her Stearns-Roger stock. Evidence at the trial disclosed that she owed $10,581.58 in assessments against her EFI fund units and owed $8,835.80 to Alex W. McCoy Associates in connection with a loan involving all EFI fund units, as well as owing $5,465.00 to her accountants for their services in connection with the case, $100.00 to an expert witness who testified in her behalf, and $2,844.13 to her attorneys for expenses advanced in her behalf in preparation of her case, and a $3,000.00 indebtedness incurred by her during the pendency of the case in the trial court, $1,000.00 of which was with the approval of the trial court secured by a pledge of the parties' baby grand piano. This would make her total liabilities $61,581.40, and her net worth $34,116.60.

This would give the parties as of December 31, 1962, less than two months prior to the commencement of the trial, combined assets of $268,634.89, combined liabilities of $234,958.45, and a combined net worth of $33,676.44. It developed at the trial that the parties had received a federal income tax refund check in the amount of $13,962.68 which had not been cashed and which would increase their combined assets to $282,597.57, and their

combined net worth to $47,639.12 at the time of the trial.

It also appears that pending the trial of the cause the trial court had made certain orders requiring the defendant to pay to the plaintiff certain sums for the support of the plaintiff and the children of the parties and to pay all utility bills for the home place in such time and manner as to avoid any interruption of service and to make all payments on the mortgage on the home place as the same became due and payable; that although the defendant paid a small amount on the support money, he paid none of such utility bills and made no payments on the mortgage on the home place, and as a result thereof plaintiff was required to make certain payments on such mortgage indebtedness to prevent foreclosure and to pay all of such utility bills, including at least one re-connection fee; and that at the time of the trial the defendant was delinquent in the sum of $2,400.00 on his payments under the orders concerning support money. While such delinquent support money would increase the plaintiff's assets to $98,098.00 and her net worth to $36,516.60 and would increase the defendant's liabilities to $178,777.05 and decrease his net worth to a *minus* $5,840.16, as of the time of the trial, none of such items would affect the combined balance sheet for the parties. We deem it unnecessary for the present purpose to determine whether or not as of the time of the trial the defendant was bound to reimburse the plaintiff for any part of such utility bills or mortgage payments so made by the plaintiff.

The trial court awarded the plaintiff alimony in the sum of $18,150.00, payable at the rate of $150.00 per month for 121 months, commencing on the 1st day of May, 1963, which the defendant contends, and the plaintiff does not controvert, then had a "present" value of $13,593.00.

In dividing the property, the trial court found that neither of the parties was in financial condition to own and maintain the home property and ordered that it be sold immediately and the net proceeds, after paying the costs of the sale and deducting the mortgage indebtedness against the property, be divided equally between the two parties. For the present purpose we shall treat this part of the judgment as, in effect, awarding to each of the parties an undivided one-half interest in the property and charging each of them with one-half of the mortgage indebtedness against the property and one-half of the costs of such sale. Also the trial court awarded to the plaintiff all of the household furnishings except the baby grand piano mentioned above and cooking apparatus called a "Hasty Bake," which the court awarded to the defendant but required the plaintiff to pay the $1,000.00 indebtedness incurred against the piano. This piano and Hasty Bake were included in the $10,000.00 valuation placed upon the parties' household furnishings in their balance sheets mentioned above, but they are not valued separately. In order not to over-value the household furnishings awarded to the plaintiff, we shall for the present purpose arbitrarily assign a value of $5,000.00 to the baby grand piano and Hasty Bake so awarded to the defendant and consider the value of the household furnishings awarded to the plaintiff as $5,000.00.

In addition to the alimony valued at $13,593.00, household furnishings valued herein at $5,000.00, and the one-half interest in the home property valued at $37,500.00, the trial court awarded to the plaintiff all of the Stearns-Roger stock valued at $24,000.00, or assets of the total value of $80,093.00.

In addition to the baby grand piano and Hasty Bake valued herein at $5,000.00 and the one-half interest in the home property valued at $37,500.00, the trial court awarded to the defendant the $13,962.68 federal income tax refund check mentioned above, all of the Aunt Lewise property, all of the EFI fund units standing in the names of each of the parties and, in effect, all of the remainder of the assets listed in the December 31, 1962 balance sheets being

used herein, or assets of the total value of $216,097.57.

In addition to requiring the plaintiff to pay one-half of the mortgage indebtedness against the home place, $22,341.19 as shown in the balance sheets used herein, and all of the $1,000.00 indebtedness incurred pendente lite by the plaintiff against the baby grand piano, the trial court required her to pay the entire $8,500.00 indebtedness secured by the Stearns-Roger stock, and by requiring the defendant to pay the other indebtedness of the parties (not specifically mentioned in the decree) only up to the date of the filing of the plaintiff's petition in this case left the plaintiff liable for the other $2,000.00 indebtedness incurred by her pendente lite, for liabilities in the total amount of $33,841.-19; and in addition to requiring the defendant to pay to the plaintiff alimony valued at $13,593.00 and one-half of the mortgage indebtedness against the home place, the trial court required the defendant to pay all of the mortgage indebtedness against the Aunt Lewise property and all of the charges and assessments against the EFI fund units listed in the name of the plaintiff and left him liable for all of the other liabilities listed in his balance sheet for December 31, 1962 being used herein, for liabilities in the total amount of $209,302.13.

Although not directly involved in the division of the property, we note here that the trial court ordered the defendant to pay to the plaintiff $4,000.00 for the use and benefit of plaintiff's attorneys as one-half of the amount which the trial court found to be a reasonable fee for their services in the trial court and $1,500.00 for the use and benefit of plaintiff's accountants. These items would affect the financial condition of the respective parties under the judgment by increasing the plaintiff's assets and increasing the defendant's liabilities by $5,500.00. We also note that although the trial court's judgment provided for alimony in the sum of $18,150.00, payable at the rate of $150.00 per month for 121 months commencing on the first day of May, 1963 and payable each month thereafter until the total sum of $18,500.00 has been paid, and also acquitted the defendant of all pending charges of contempt of court for failure to fully comply with the prior orders of the trial court, it did not expressly discharge the defendant from his accrued and undischarged liability under such prior orders. Therefore, since the question of such discharge is not presented in this appeal, we shall assume herein for the present purpose that such liability remained. The unpaid temporary support money for the plaintiff and the children of the parties would increase the plaintiff's assets and the defendant's liabilities under the judgment by an additional $2,400.00.

Thus, under the trial court's judgment the plaintiff's assets would be $87,993.00, her liabilities (disregarding the unknown amount owed to her attorneys for their services in the trial court) would be $40,-750.42, and her net worth would be $47,-242.58, which is $10,725.98 more than her net worth immediately preceding rendition of the judgment and $10,784.98 more than her net worth at the time of the marriage of the parties; and under such judgment the defendant's assets would be $216,097.57, his liabilities would be $217,202.13, and his net worth would be *minus* $1,104.56, which would be $6,944.72 less than his net worth immediately preceding rendition of the judgment and $78,649.62 less than his net worth at the time of the marriage of the parties. Although the plaintiff ended up with only about one-fourth as much in assets as the defendant did, the plaintiff's net worth was more than $48,000.00 in excess of the defendant's net worth under the judgment.

Under the applicable statute (12 O.S.1961, § 1275) the trial court was not required to restore to the wife all of the property owned by her at the time of the marriage of the parties or acquired in her name during the marriage, or to award to her other property in lieu of her separate

property which had been disposed of during the marriage. Especially in view of the trial court's finding, in its journal entry and in its separate findings of fact, that at the time of the trial the defendant was nearing insolvency and that both parties were at fault in wasting his assets—a finding which is amply supported by the evidence—this court cannot say that as applied to the plaintiff the trial court abused its discretion as to the amount of alimony allowed the plaintiff or in dividing and disposing of the property of the parties in the manner in which it did so. Consequently, the plaintiff's first proposition that the trial court erred in making an inadequate award to the plaintiff of alimony and/or division of jointly-acquired property and by failing to restore plaintiff's separate property cannot be sustained.

In its journal entry of judgment, the trial court found that $8,000.00 would be a reasonable fee for plaintiff's attorneys (naming them) and ordered that the defendant pay $4,000.00 to the plaintiff for the use and benefit of said attorneys; and found and ordered that the defendant pay to plaintiff's accountants, Lybrand, Ross Brothers & Montgomery, the sum of $1,500.00 for services rendered in connection with the presentation of the plaintiff's case, and that the defendant pay the debts of said marriage up to and including the date of the filing of the petition by the plaintiff (September 10, 1962), including the court costs of the action (which we construe as meaning all court costs of the action, since there could be no such costs prior to the filing of the petition by the plaintiff).

Under her second proposition that the trial court erred in awarding inadequate attorneys' fees and suit money to her, the plaintiff, without citing any statutory or case law, contends in substance and effect that the trial court should have required the defendant to pay all of her expenses of the litigation, including $5,465.00 reasonably charged by her accountants for preparing and presenting the financial aspects of her case, $100.00 reasonably charged by an expert witness employed and used by her concerning the value of certain assets of the EFI–1960 fund, $2,-844.13 in expenses advanced on her behalf by her attorneys in the preparation of her case, and a reasonable fee for her attorneys in the amount of at least $25,000.00. There was evidence concerning the expenditures made by her attorneys and the purposes for which they were made and as to the services performed by her accountants and the reasonableness of their charges therefor, but there was no evidence as to the reasonable value of the services performed by her attorneys or as to the reasonable value of the services performed by her expert witness.

The defendant does not contend that in a divorce action wherein a divorce is granted to both parties for the fault of both parties the husband cannot be required to pay any part of the wife's expenses of the litigation, or that in this case the $8,000.00 found by the trial court to be a reasonable fee for plaintiff's attorneys is excessive, or that the amount of expenses advanced by said attorneys was either unnecessary or excessive, or that the $100.00 charge by plaintiff's expert witness was excessive, or that the $5,465.00 charged by plaintiff's accountants would be excessive for the services actually performed by them in the case, but contends that the $25,000.00 fee suggested by the plaintiff's attorneys for their services would be exorbitant; that a considerable portion of the time and effort spent by plaintiff's attorneys resulted from the litigious nature of the plaintiff and her attorneys rather than from necessity; and that most of the time spent by the plaintiff's accountants was devoted to trying to find discrepancies between various records of the defendant and of Alex W. McCoy Associates rather than in attempting to determine the true financial condition of the defendant at the time of the marriage and at the time of the divorce. The defendant's basic contention with respect to the trial court's orders con-

cerning such expenses of litigation is that considering all of the circumstances, including, but not limited to, the financial condition of the respective parties and the defendant's ability to pay, the trial court did not abuse its discretion, citing Brannon v. Brannon, 207 Okl. 529, 250 P.2d 447, and Laster v. Laster, Okl., 370 P.2d 823.

In the Brannon and Laster cases, supra, the only expenses of litigation involved were the attorneys' fees allowed the respective wives. In the Laster case, this court, citing the Brannon case, said:

"The trial court, under 12 O.S.1961 § 1276, may allow the wife a reasonable attorney's fee 'considering the respective parties and the means and property of each.' What constitutes a reasonable fee is largely in the discretion of the trial court."

In the Brannon case, following such statement and citing Richard v. Richard, 142 Okl. 302, 286 P. 900, this court said:

" * * * In determining the amount of a reasonable fee the ability of the husband to pay is one of the factors to be considered."

12 O.S.1961, § 1276, so cited in the Brannon and Laster cases, provides, insofar as pertinent in those cases:

" * * * on granting a divorce in favor of the wife or refusing one on the application of the husband, the court may require the husband or wife to pay such reasonable expenses of the other in the prosecution or defense of the action as may be just and proper, considering the respective parties and the means and property of each."

Plaintiff in her reply brief did not see fit to contend that 12 O.S.1961, § 1276 would have no application in a case wherein a divorce was granted to both parties, or that the Brannon and Laster cases would not be in point because they did not involve a situation wherein a divorce was granted to both parties, and she did not cite any statute that she claimed would be applicable in this case. Therefore, finding no other statute,

we shall assume for the purposes of this case only, but do not decide, that the above-quoted portion of 12 O.S.1961, § 1726, supra, is applicable in this case.

Since the quoted portion of 12 O.S.1961, § 1276 applies to all reasonable expenses of the prosecution or defense of a divorce action and not just to attorney's fees, what this court said in the Brannon and Laster cases concerning attorney's fees would, in principle at least, be equally applicable to other expenses of litigation.

There was no evidence concerning the reasonable value of the services rendered by the plaintiff's attorneys. Although this court might from a consideration of the pleadings, applications, orders and proceedings appearing in the record from the trial court make a guess as to the reasonable value of such services, that is not its province. We cannot say that as applied to the plaintiff the trial court abused its discretion in finding that $8,000.00 would be a reasonable fee for such services.

From the evidence, it is clear that the defendant has the training and the ability to earn much, much more than an average salary, and under the trial court's judgment dividing the property of the parties, approved hereinabove, has assets which should produce considerable other income. His "current assets" under such judgment include cash items in the amount of $14,270.00 ($307.32 cash on hand and in banks and the $13,962.68 United States Treasury check for refund of 1961 income taxes of the parties), as well as $400.00 in accounts receivable other than $14,774.57 in unpaid salary, for a total of $15,174.57 of accounts receivable, with no indication that any of such accounts receivable might not be paid in full soon after the rendition of the judgment. These "current assets" total $29,444.57.

On the other hand, it appears that with six children to care for and with no showing of any special training, the plaintiff would not be able to earn any appreciable amount of salary or wages, and while it might be assumed that her Stearns-Roger stock would continue to produce dividends at the

rate of $200.00 per month until the death of her father who gave her the stock until his death, and under the trial court's division of the property approved hereinabove she would receive alimony at the rate of $150.00 per month, as well as the child support money of $200.00 per month ordered by the trial court but not involved in this appeal, for a total monthly income of $550.00 at the present time, she did not receive any cash or other "current assets" under such judgment, except for the $5,500.00 which the trial court ordered the defendant to pay to her for the use and benefit of her attorneys and accountants, and possibly some or all of the amounts which the defendant did not pay under prior orders of the trial court.

■ Considering the parties and all of the circumstances, including the means and property of the respective parties, we believe that the trial court should have required the defendant to pay to the plaintiff, by way of reimbursement and/or for the benefit of the proper persons, litigation expenses in the total sum of $16,409.13 to cover the entire $8,000.00 fee found by the trial court to be a reasonable fee for plaintiff's attorneys for their services in the trial court, $2,844.13 expenses advanced by said attorneys in connection with the proceedings in the trial court, $5,465.00 for plaintiff's accountants and $100.00 for the expert witness employed and used by the plaintiff in the trial court, and that the trial court's failure to so order constituted an abuse of discretion. The trial court is directed to modify its judgment of April 29, 1963 accordingly.

Subsequent to the lodging of this appeal, this court on June 24, 1963 on application of the plaintiff entered an order requiring the defendant, among other things, to pay all delinquent utility bills for the home place up to and including April 29, 1963 (the date of the trial court's judgment), as provided in pendente lite orders of the trial court and for the month of April, 1963 and do so on or before August 1, 1963, and also requiring the defendant to pay all such utility bills for the month of May, 1963 and subsequent

thereto, and further requiring the defendant to pay all delinquent, current and subsequent payments on the mortgage on the home place, with all such subsequent payments made by defendant to be considered when this appeal is finally determined and also to reimburse the plaintiff for house mortgage payments made by her for the month of May, 1963. On July 23, 1963 this court on application of the plaintiff entered an order requiring the defendant, among other things, to pay to the plaintiff $200.00 per month for support of the two minor children of the parties and $150.00 per month as temporary alimony for the plaintiff on the first day of August, 1963, and each month thereafter pending final determination of this appeal.

It also appears that during the month of April, 1964 the home property was with the approval of this court sold, and the $17,713.70 balance of the $32,713.70 net proceeds remaining after payment of $10,000.00 to the plaintiff and $5,000.00 to the defendant was deposited with the clerk of the trial court; and that on June 2, 1964 this court, without making any determination as to which of the respective parties should be charged therefor, entered an order directing the clerk of the trial court to pay from such balance $10,006.85 to the plaintiff, $2,206.85 to the defendant and $1,500.00 to plaintiff's attorneys, which, of course, would leave a balance of $4,000.00 in the custody of the clerk of the trial court.

Each of the parties has filed in this court applications for the allowance of various claims against the other party and for distribution of such $4,000.00 balance to the applicant, and the parties have filed a stipulation concerning amounts paid by the defendant which it is agreed should be charged against the plaintiff. However, such stipulation did not agree upon the amounts of payments made by the defendant on the mortgage against the home property between the time of the commencement of this action in the trial court and the sale of such property, and there is no stipulation concerning the amounts of such payments

made by the plaintiff during the same period or concerning charging the defendant with any of the amounts so claimed by the plaintiff.

■ Under the judgment of the trial court as approved hereinabove, each of the parties was chargeable with one-half of the mortgage indebtedness against the home property and was entitled to receive one-half of the net proceeds upon the sale of the property as ordered by the trial court. It is the opinion of this court that in harmony with such judgment of the trial court each party's half of such net proceeds should be charged with one-half of all amounts paid by the other party between the commencement of this action in the trial court and the sale of the property as payments on the mortgage against the property or necessarily incident to preventing foreclosure of the mortgage, or as abstract expense or other expense necessarily incident to the aforesaid sale of the property; and that the amounts so chargeable against the share of each of the parties should be considered in the final allocation of such net proceeds between the parties. Since the sale was made in accordance with the judgment of the trial court, herein approved by this court, and there is no agreement between the parties or conclusive evidence as to the payments so made for those purposes by either party, we leave to the trial court the determination of the amount properly payable to each party from the net proceeds of the home property, in accordance with the views expressed in this paragraph hereof, and the disbursement of the balance of such net proceeds now in the custody of the clerk of that court.

Although in discussing the financial condition of the parties under the judgment of the trial court, we assumed for that purpose that such judgment did not relieve the defendant of his obligation to make all payments required of him under the pendente lite orders of the trial court, neither that question, nor the question of whether or not any item claimed by either party against the other party is a valid charge against such other party, nor the question of whether or not any such valid charge against the other party would properly be chargeable against his or her interest in and to the net proceeds of the sale of the home property, other than the items herein specifically charged, or ordered to be charged, against such an interest in said proceeds, is involved in this appeal. We leave all such questions for determination by a proper forum.

■ All expenses of this appeal, including court costs herein, the costs of the record on appeal, briefs and any and all reasonably necessary expenses advanced by plaintiff and her attorneys in her behalf in connection with the appeal and a reasonable fee for plaintiff's attorneys' services in connection with the appeal shall be, and hereby are, charged against the defendant.

The judgment of the trial court to the extent involved in this appeal as modified herein is affirmed, and the cause is remanded to the trial court with directions (a) to modify its judgment with respect to the expenses of the litigation and (b) to determine the amounts which, under the views expressed herein, are chargeable against each party's one-half interest in and to the $32,713.70 net proceeds of the sale of the home property of the parties for payments made by such party between the commencement of the action in the trial court and the date of the sale of the property as payments against the mortgage against such property or necessarily incident to preventing foreclosure of the mortgage, or as abstract expense or other expense necessarily incident to such sale of the property, and to disburse the balance of such net proceeds now in the custody of the clerk of the trial court, and (c) to determine what amount would be a reasonable fee for plaintiff's attorneys' services in this court and the amounts reasonably expended or incurred by the plaintiff and her attorneys in her behalf as expenses of this appeal, and to require the defendant to pay such amounts to the plaintiff

by way of reimbursement and/or for the benefit of the proper persons.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, WILLIAMS and LAVENDER, JJ., concur.

HODGES, J., concurs in part and dissents in part.

BLACKBIRD and BERRY, JJ., dissent.

HODGES, Justice (concurring in part and dissenting in part).

I concur in the opinion of the majority except for the following item of distribution of property:

The plaintiff was the owner before her marriage to the defendant of 1200 shares of Stearns-Roger stock. During the marriage the defendant obtained a loan from a bank in Denver, Colorado, pledging this stock as collateral. The unpaid balance of this encumbrance at the time of trial was $8,-500.00. The trial court awarded the Stearns-Roger stock to the plaintiff, but required the plaintiff to assume the obligation of repaying the balance of the loan in the amount of $8,500.00. In my opinion a more equitable division of property would be to award the Stearns-Roger stock to the plaintiff, free of any encumbrance or obligation and to require the defendant to assume responsibility of repayment of the unpaid balance of the loan.

## SUPPLEMENTAL OPINION ON REHEARING

PER CURIAM.

In her petition for rehearing filed herein Plaintiff in Error has called our attention to the fact that in our opinion promulgated on February 28, 1967, we did not dispose of two matters which arose in this cause while the same was pending on appeal in this court. We deem it necessary to pass on those questions.

We find that said opinion should be, and is hereby amended and enlarged in the following particulars:

The defendant is not relieved by this opinion of his liability, under prior order of this court, to pay all utility bills for the home place of the parties for the month of May, 1963, and subsequent months, or to reimburse the plaintiff for any of such utility bills heretofore paid by her.

The temporary alimony of $150.00 per month, beginning as of the first day of August, 1963, heretofore required by this court to be paid by the defendant to the plaintiff, shall be in addition to all amounts allowed the plaintiff by the judgment of the trial court or by this opinion, and the defendant shall be liable to the plaintiff for all amounts accrued thereunder as of the first day of each and every calendar month from the first day of August, 1963, to the first day of the calendar month during which the mandate based upon this opinion shall be spread of record in the trial court.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, BERRY, HODGES and LAVENDER, JJ., concur.