## CHAMBERLAIN et al. v. CHAMBERLAIN.

No. 16812—Opinion Filed April 6, 1926.

On Rehearing July 13, 1926.

### 1. Divorce—Appeal—Sufficiency of Evidence.

In a contested divorce case, where the parties are praying for a divorce and division of property, and the evidence is conflicting and there is sufficient competent evidence to support the findings of the court and the judgment and decree based thereon, the same will not be disturbed by this court on appeal.

### 2. Divorce—Ground of Adultery—Proof by Circumstances.

Where adultery is alleged as a ground for divorce, the general rule is that it is not necessary to prove the direct fact of adultery; this fact may be proved by circumstances, but the circumstances must be such as will leave the guarded discretion of a reasonable and just man to the conclusion of guilt, and the party relying on the charge of adultery has the burden of proving it by a fair preponderance of the evidence.

### 3. Divorce—Appeal—Grounds of Decree— Right of Prevailing Party to Complain.

A reversal of a judgment of divorce and division of community property cannot be had because of alleged errors of the court in finding that one cause of action alleged in the petition is not sustained by the evidence, where the decree is granted upon another cause of action alleged in the same petition which the court finds is sustained by the evidence.

### 4. Divorce—Division of Jointly Acquired Property—Former Settlement as Defense.

In a suit for divorce and division of property alleged to have been acquired through the joint efforts of the parties, when the wife sets up a prior written contract of settlement entered into between herself and husband as a defense against any further division of the property, she must be able to

show not only that it was entered into fairly and without misrepresentation, overreaching, or fraud, but also that its provisions are equitable and just under the circumstances.

### 5. Same—Equitable Division of Property— Appeal—Disposition of Cause.

Jointly acquired property within the meaning of section 508, Comp. Stats. 1921, is that property accumulated by the joint industry of the husband and wife during the marriage, and if a divorce is granted to either, an equitable division thereof should be made and the judgment of the trial court making such division will not be disturbed on appeal unless it appears that such judgment is contrary to the clear weight of the evidence.

Appeal from District Court, Tulsa County; Edwin R. McNeill, Judge.

Action by Moffeit Chamberlain against Emma Chamberlain for divorce and alimony. From a judgment granting defendant a divorce on her cross-petition and plaintiff judgment for alimony, defendant appeals, joined by Marie Downing, to whom defendant conveyed certain property in face of restraining order. Affirmed.

Owen Owen and G. C. Spillers, for plaintiffs in error.

Woodard & Westhafer, for defendant in error.

PHELPS, J. The parties hereto will be referred to as they appeared in the trial court.

On September 6, 1924, Moffeit Chamberlain filed his petition in the district court of Tulsa county against Emma Chamberlain, his wife, in which he prayed for decree of divorce and division of property. She filed her answer and cross-petition, in which she pleaded that on August 31, 1923, she and the plaintiff had entered into a written contract settling their property rights, and also prayed for a decree of divorce upon three grounds, to wit: abandonment, gross neglect of duty, and adultery.

The trial of the cause extended over a period of about eight days, during which time much evidence was introduced, at the conclusion of which the court made extensive findings of fact and conclusions of law and granted defendant a decree of divorce upon her cross-petition upon the grounds of gross neglect of duty, and canceled the contract settling the property rights between the parties and directed the defendant to pay to the plaintiff the sum of $21,500 from the property held by defendant, which the court found to be jointly acquired property, and also settled in him the title to certain real estate in Oklahoma City, and to reverse that part of the judgment settling the property interest between the parties appeal is prosecuted to this court by the defendant.

In her petition in error the defendant, who is plaintiff in error here, sets out 39 assignments of error, and her attorneys filed briefs consisting of more than 350 pages, which are answered by briefs consisting of 125 pages, in all of which the assignments of error are treated under eight heads or divisions, the first of which is that the order of the court requiring defendant to pay to plaintiff the sum of $21,500 is inequitable, unjust, and contrary to the law and the evidence, since defendant claims the property to be her separately acquired property.

It appears that these people sprang from poor but honest, frugal, and industrious parentage, and were married in West Virginia in 1890, and set sail upon the voyage of life together with practically nothing, but with industry, thrift, and economy accumulated a fortune which the plaintiff in his petition alleged to be of the value of at least $100,-000, but which the court found to be about $65,000. It appears from the record that the title to all this property, except one house and lot in Oklahoma City, was in the name of the defendant, Emma Chamberlain, and she claimed it as her separate property, but the court found that it was jointly acquired property.

Complaining of this order, defendant insists that the foundation of their accumulations consisted of $300 which she obtained from her mother, to which was later added another $150, with which she bought a lot upon which she built a house, and from the rents of this accumulated a fund with which she bought other property after they came to Oklahoma, and that on several occasions her husband gave her other moneys under such circumstances as to make it her individual property, and that the couple did not actually live together after November, 1920, and that a considerable portion of the property in her hands was accumulated by her after that time, and this being her separate property, it was inequitable and unjust to require her to pay over any portion of it to the plaintiff. While it is claimed by plaintiff that all this property represented their joint accumulations during coverture. We have carefully read the entire briefs filed by both parties and much of the record in this case, and find that the evidence on this question, as on practically all other questions considered upon the trial, is decidedly conflicting.

Section 508, Comp. Stats. 1921, provides:

"* * * As to such property, whether real or personal, as shall have been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall make such division between the parties, respectively, as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof. * * *"

It cannot be disputed that this action, being for a divorce and division of property, is of purely equitable cognizance. Gray v. Gray, 89 Okla. 237, 215 Pac. 208. And the disputed question as to whether the property in the hands of defendant at the time the action was commenced was her separate property, or community property, was a question to be determined from the evidence by the trial court, and under the well-settled rule in this jurisdiction, where the evidence is conflicting and there is sufficient competent evidence to support the findings of the court and the decree based thereon, the same will not be disturbed on appeal. Adams v. Adams, 30 Okla. 327, 120 Pac. 566. Or, in causes of purely equitable cognizance, on appeal this court will examine the evidence, but will not disturb the finding of the trial court unless the same is contrary to the clear weight of the evidence.

As the evidence was conflicting, we can use no language more forceful in expressing our views here than that used by this court in Stovall v. Stovall, 29 Okla. 125, 116 Pac. 791, when it was said:

"Actions, conduct, and appearances often speak louder than words in cases of this character. Often, if not always, the case must be decided on the conflicting evidence of the intensely interested parties, and in such cases their personal presence, appearance, and demeanor are of supreme importance, as these physical facts cannot be shaded to fit the occasion, and in such situation poor, frail human nature is subjected to one of its severest tests."

And since the trial court saw and heard the witnesses upon the witness stand and had an opportunity to observe their conduct and demeanor, it was in a better position to reach a correct conclusion as to the equities than we are when we merely read the testimony in the record, and after having so observed the conduct of the witnesses and upon the evidence reached its conclusions and made its findings thereon, we cannot say that such findings and the judgment rendered thereon are contrary to the clear weight of the evidence, and, therefore, are not disposed to disturb the same here.

It is next contended by defendant that the court's finding that plaintiff had not abandoned defendant was contrary to the evidence, it being contended by defendant that plaintiff left her in November, 1920, and it does appear from the record that they never lived together as husband and wife after that time; however, in plaintiff's petition he alleges and attempts to prove, on the contrary, that the defendant abandoned him. He claims that while he was away from home on a business trip defendant sold their home and that he joined in the conveyance upon defendant's representation that she would properly account for the proceeds of such sale, but that when he returned to Tulsa he found that his wife had moved into the home of their daughter and refused to live with him as his wife, while she insists that she urged him to resume the marital relations with her; and after hearing all the evidence upon that subject, the court made its finding as follows:

"The court finds that the allegation in plaintiff's petition to the effect that the defendant abandoned said plaintiff is not established by the evidence, nor is the allegations of defendant's cross-petition to the effect that plaintiff abandoned said defendant established by the evidence."

It is the contention of defendant that under section 6613, Comp. Stats. 1921, all the property accumulated by defendant after November, 1920, the date upon which defendant claims plaintiff abandoned her, was her separate property and the court had no jurisdiction or authority over the property thus accumulated in making its order dividing the community property between the parties. A careful examination of all the evidence on this particular phase of the case shows such a hopeless and irreconcilable conflict that we are again compelled to rely upon the finding and judgment of the trial court, who had an opportunity to see and hear the witnesses, and as such finding and judgment is not contrary to the clear weight of the evidence, we shall not disturb the same.

It is further contended by defendant that the court erred in refusing to grant her a decree of divorce on the ground of adultery. Upon this allegation in her petition she introduced voluminous evidence attempting to show that plaintiff had been guilty of adultery with another woman.

Section 1852, Comp. Stats. 1921, reads as follows:

"Adultery is the unlawful voluntary sexual intercourse of a married person with one of the opposite sex; and when the crime

is between persons, only one of whom is married, both are guilty of adultery."

No witness testified to any specific acts of adultery by plaintiff, but considerable testimony was introduced tending to show a familiarity between plaintiff and "the other woman," from which defendant claims the act of adultery should be inferred.

In Hartshorn v. Hartshorn, 67 Okla. 45, 168 Pac. 822, where one of the parties pleaded adultery by the other as a ground for divorce, this court said:

"The party relying on the charge of adultery has the burden of proving it by a fair preponderance of the evidence"

—and further held that in proving adultery by circumstances it was necessary to establish a criminal disposition or desire in the mind of both defendant and the particeps criminis, and also an opportunity to commit the crime. A careful examination of the evidence reveals a state of familiarity, to say the least, between plaintiff and "the other woman" calculated to lead to very grave suspicions that their relations, morally, were not such as to afford an example worthy of emulation, but after hearing all the evidence in behalf of, and in defense of, this allegation and denial thereof, the court found:

"That the allegation in defendant's cross-petition that the plaintiff was guilty of adultery is not established by the evidence."

However, even if the court did commit error in finding that the evidence was not sufficient to establish the charge of adultery, we are unable to see how defendant was prejudiced thereby. Defendant was granted a decree of divorce on her cross-petition because of plaintiff's fault, and whether he was guilty of adultery, so far as her right to a divorce is concerned, would be immaterial after the court found that she was entitled to a divorce on the grounds of gross neglect of duty, except in so far as it might influence the court in reaching the proper conclusion in making an equitable division of the community property, and as the court found that plaintiff was at fault and made an order dividing the jointly acquired property, we cannot say that the order would have been different if the court had also found that the evidence sustained the charge of adultery, and we can see no good reason why the judgment should be reversed where the defendant got one of the things she prayed for, to wit, a decree of divorce, about which no complaint is made in the appeal except that it was not granted on the three grounds alleged in her cross-petition instead of one.

Terrill v. Terrill (Cal.) 42 Pac. 137; Johnson v. Johnson (Colo.) 43 Pac. 130.

It is further contended by defendant that the court erred in not finding from the evidence that defendant had always conducted herself towards plaintiff as a faithful, dutiful, and affectionate wife, contending that if she had so demeaned herself and was without fault in the premises and that plaintiff was at fault, the division of property made by the judgment of the court was inequitable. The record does not disclose any glaring instances wherein we can say that the defendant was not an upright woman, but it is contended by plaintiff that she was "money crazy," and that his business took him away from home much of the time and in her eagerness to accumulate money she would rent out his bedroom, leaving no room for him to sleep when he came home except on a couch or cot in the kitchen or on the porch; this being vigorously denied by defendant. In passing, we deem it not inappropriate to suggest that an examination of the record convinces us, as it doubtless did the trial court, that neither party was entirely free from blame, neither was either one of the parties entirely at fault and responsible for their domestic unhappiness. We commend the efforts of both parties to accumulate wealth within reasonable bounds, but, doubtless, if the plaintiff had remained at home more of the time and bestowed his affections upon his wife alone, and she had given more attention to the things that make a really happy home instead of being so eager to accumulate wealth, they, no doubt, would have avoided their present unfortunate situation. We see no reason, however, in the light of the record, why the finding of the trial court should be disturbed.

It appears that after the commencement of this action certain property held by defendant and claimed by plaintiff to be community property, was conveyed by defendant to her daughter, Marie Downing, in the face of a restraining order issued by the court prohibiting her from doing so, which conveyance the trial court found to be without consideration and, therefore, null and void, and, as we view it, neither the record nor defendant's briefs show any good reason why this finding of the court should be disturbed.

It further appears that on August 31, 1923, a contract of settlement was entered into between plaintiff and defendant, whereby they settled, between themselves, their property interests, which contract, upon plaintiff's complaint, the court found was procured by defendant through misrepresentation and undue influence and upon her state-

ment that the same would be changed and modified at any time the plaintiff so desired, and of the finding of the court and its judgment annulling the same defendant complains. There is no question but that under section 6609, Comp. Stats. 1921, they had a right to enter into such contract, limited only by the rules which control the contracts of persons occupying such confidential relations, but such contracts are not binding unless it can be said from all the evidence that they are just and equitable, viewed from all the circumstances existing at the time they were entered into. Montgomery v. Montgomery, 41 Okla. 581, 139 Pac. 288; Howell v. Howell, 42 Okla. 286, 141 Pac. 412. We cannot say, after examining this record, that the court's finding thereon was not amply sustained by the evidence.

It is defendant's eighth and last contention that the judgment of the court giving plaintiff the Oklahoma City property and $21,500 in money, to be paid out of the property held by defendant, which the court found to be jointly acquired property, was inequitable and contrary to the evidence, under any theory of the case. Under our statutes and the decisions of this court the trial court is, properly, given great latitude in dividing community property where a divorce is granted, and in Tobin v. Tobin, 89 Okla. 12, 213 Pac. 884, in discussing section 508, Comp. Stats. 1921, this court used the following language:

"This division of the section contemplates and requires that whether the divorce is granted to the husband or the wife, the property jointly acquired by them during the marriage, whether it be in the name of the husband or the wife or both. shall be divided between them in a manner just and reasonable, taking into consideration all the facts and circumstances surrounding the life of the parties and the efforts of each to accumulate the same."

And since the court found that:

"The present estate could not and would not have been acquired except for the joint efforts of both the plaintiff and the defendant; that each performed a part in its acquirement during their marriage relation. That the defendant received all the joint earnings of plaintiff and defendant, with the exception of the property in Oklahoma City, and that by her management and industry an estate has been jointly acquired and conserved by their joint efforts"

—we are not willing to say that the court erred either in finding that the property in question was jointly acquired as contemplated by section 508, Comp. Stats. 1921, or that the court erred in its judgment dividing the same between the parties.

We have seldom read a record displaying such care, caution, and patience on the part of the trial court in its effort to do exact justice between the parties as is shown here, and it is our conclusion that on all questions submitted to and decided by the court affecting the rights of the parties to this action there is abundant evidence to sustain the same, and the judgment of the trial court is in all things affirmed.

NICHOLSON, C. J., BRANSON, V. C. J., and MASON, LESTER, and RILEY, JJ., concur.

### On Rehearing.

RILEY, J. Under the defendants' eighth assignment it is contended that the judgment of the court awarding plaintiff $21,500 in money, to be paid out of the property held by the defendants, and in addition certain real estate located in Oklahoma City, of the approximate value of $2,800, is inequitable and contrary to the evidence.

The trial court found the estate to be of the value of $65,000. This finding was necessarily based upon the testimony of Emma Chamberlain. She alone testified that the estate was valued in the sum of from $60,000 to $65,000, but following her conclusion as to this value she testified and introduced itemized statements showing that of the total value of $62,796.39, a part thereof, to wit: $43,578.79, was made up of second mortgages of the value of 50 cents on the dollar. From this undisputed testimony we find the value of the estate to be $41,007.

The trial court in conclusions of law found that a just, fair, and equitable division of the jointly acquired property to be to grant plaintiff money judgment in the sum of $21,500, "being approximately a one-third interest in and to the same, and allow the plaintiff to have and retain the equity in the property at Oklahoma City." While we think the controlling feature of the court's conclusion is the amount granted, to wit, $21,000, and not the expression "being approximately a one-third interest," yet, being governed as we are in this kind of an action by the statute, we are not bound by the ratio of the award. The conclusion as to the value of the estate is not supported by the facts in evidence. We conclude that a fair, just, and equitable division of the jointly acquired property would be to grant plaintiff, Moffeit Chamberlain, the sum of $18,000, and award him the equity in the property at Oklahoma City. The judgment of the trial court is hereby modified to this extent, and as modified is affirmed. The

clerk of this court is directed to issue the mandate forthwith.

BRANSON, V. C. J., and HARRISON. MASON, and HUNT, JJ., concur. PHELPS, J., dissents.