837 P.2d 463 (1990)
In the Matter of the ESTATE OF Robert D. (Bunk) KING, Deceased.
J.D. CASEY, Appellant,
v.
Jimmy Ray SELF, Appellee.
No. 69075.
Supreme Court of Oklahoma.
December 26, 1990.
As Corrected January 11, 1991.
Rehearing Denied September 10, 1992.
Jonathan K. Sullivan, Poteau, for appellant.
John N. Henderson, Stigler, for appellee.
*464 HODGES, Justice.
The issues presented are (1) the constitutionality of Okla. Stat. tit. 84, § 215 (1981),[1] which provides for the inheritance of a child born out of wedlock, and (2) the degree of proof required to show paternity of a child born out of wedlock in order to inherit from a father. We find that Okla. Stat. tit. 84, § 215 is constitutional. We also find that a child born out of wedlock claiming under section 215 must prove paternity by clear and convincing evidence.
On December 10, 1985, Robert D. King (King) executed a will. King bequeathed all his property to Jimmy Ray Self (Self) and Charles Hare (Hare). On February 21, 1986, King died. Five days later, Self filed a petition to probate King's will and prayed that he be appointed personal representative of the estate.
On March 17, 1986, two of King's sisters, Margaret Tankersley and Vera Dorsey, and King's niece, Vera Mangum, filed an objection to the will alleging that it was obtained by undue influence and coercion or, in the alternative, that King lacked testamentary capacity. On April 28, 1986, the district court filed an order admitting the will to probate and finding that, at the time of the execution of the will, King was possessed of testamentary capacity and was not acting under duress, fraud, menace or undue influence. On the same day, letters testamentary issued to Self. A motion for a new trial was filed and overruled; no appeal was taken.
On February 6, 1987, J.D. Casey (Casey), the respondent, filed an Application for Determination of Heirship as Unintentional Omitted Child. Casey bases his right to inherit from King on section 215 of title 84. A hearing was held on May 28, 1987, after which the district court denied the application. The district court found that the evidence of Casey's relationship to King was contradictory, conflicting, and not clear and convincing. The Court of Appeals reversed the trial court and found that section 215 was unconstitutional under the fourteenth amendment to the federal Constitution.

I.

Constitutionality of Okla. Stat. tit. 84, § 215 (1981).
The fourteenth amendment to the federal constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." Section 215 places special burdens on children born out of wedlock before they can inherit from their father. Casey argues that section 215 violates the equal protection clause of the fourteenth amendment. The United States Supreme Court has considered "the constitutionality of statutory provisions that impose special burdens on illegitimate children."[2]
In Trimble v. Gordon,[3] the United States Supreme Court struck down an Illinois statute prohibiting illegitimate children from inheriting by intestate succession from their fathers unless the parents inter-married and the father acknowledged the child.[4] Under Illinois law, legitimate children *465 could inherit by intestate succession from both parents.[5] The father and mother had lived together from 1970 until the father's death in 1974. A paternity order had been entered in 1973 finding that the deceased was the father of the child and ordering him to pay for her support. The Court found that the state had a legitimate interest in "assuring accuracy and efficiency in the disposition of property at death."[6] However, the Court found that "[t]he reach of the statute extend[ed] well beyond [its] asserted purposes"[7] because the statute unnecessarily excluded "some significant categories of illegitimate children [whose] inheritance rights [could] be recognized without jeopardizing the orderly settlement of estates or the dependability of titles to property passing under intestacy laws."[8] Refusing to apply the "strict scrutiny" test,[9] the Court recognized that "[t]he more serious problems of proving paternity might justify a more demanding standard for illegitimate children claiming under their fathers' estates than that required either for illegitimate children claiming under their mothers' estates or for legitimate children generally."[10]
In Lalli v. Lalli,[11] the United States Supreme Court was asked to declare unconstitutional a New York statute imposing special burdens on children born out of wedlock.[12] Inheritance from the father by a child born out of wedlock required a judicial determination of paternity made during the lifetime of the father. The Court held that the state had a substantial interest in providing "for the just and orderly disposition of property at death"[13] and the protection of "`innocent adults and those rightfully interested in their estates from fraudulent claims of heirship and harassing litigation instituted by those seeking to establish themselves as illegitimate heirs.'"[14] Recognizing the particular problems of proof when an individual claims to be the illegitimate child of a deceased[15] and the increased accuracy of "placing paternity disputes in a judicial forum during the life-time *466 of the father,"[16] the Court found that the requirement imposed by the statute was substantially related to important state interests and upheld the statute.[17]
In Reed v. Campbell,[18] the United States Supreme Court once again addressed the issue of restrictions placed on an illegitimate child's right to inherit from her father by intestate succession. Under attack was a Texas statute which required that parents of an illegitimate child inter-marry before the child could inherit from the father.[19] After the death of the father, the child notified the administratrix and the Probate Court of her claim to the estate. Subsequently, a jury found that the deceased was the father of the illegitimate child. The United States Supreme Court held that Trimble applied retroactively and struck down the statute because the denial of the child's right to inherit from her father was not related to the state's interest.[20] However, the Court reaffirmed its position that "statutory provisions that have an evident and substantial relation to the State's interest in providing for the orderly and just distribution of a decedent's property at death" would be upheld against fourteenth amendment challenges.[21] The Court further stated that "[t]he state interest in the orderly disposition of decedents' estates ... justifies the enforcement of generally applicable limitations on the time and the manner in which claims may be asserted."[22] In Reed, the Court affirmed its position that procedural requirements imposed on illegitimate children as a prerequisite to eligibility to inherit from a father by intestate succession are constitutional if the requirements are substantially related to the orderly disposition of decedent's estates. But when the statutory requirements effectively prevent illegitimate child from inheriting from the father by intestate succession, the statutory provisions violate the fourteenth amendment.
Section 215 of title 84 does not violate the Equal Protection Clause of the federal Constitution. The statutory provisions in Lalli required a determination of paternity before the father's death. The United States Supreme Court held that those provisions did not violate the equal protection clause of the fourteenth amendment.[23] Section 215 is less restrictive than the provisions upheld in Lalli. Further, section 215 meets the test articulated in the Trimble, Lalli, and Reed: Special burdens placed on children born out of wedlock as a prerequisite to taking from an alleged father's estate must be substantially related to a legitimate state interest.[24] The orderly disposition of estates is a legitimate state interest which justifies "limitations on the time and the manner in which claims may be asserted."[25] In the present case, since the father is dead, the special burdens placed on children for inheritance purposes under section 215 are acceptable for purposes of the fourteenth amendment. Unlike the statutory provisions under attack in Trimble and Reed, section 215 does not unnecessarily exclude "some significant categories of illegitimate children of intestate men [whose] inheritance rights can be recognized without jeopardizing the orderly settlement of estates or the dependability of titles to property passing under intestacy laws."[26] As in Lalli, the statutory provision under attack here is substantially *467 related to a legitimate state interest and does not violate the fourteenth amendment.

II.

Burden of Proof.
We next turn to the burden of proof required for a child born out of wedlock to inherit from his father by intestate succession. The trial court found that "[t]he evidence presented to the Court was not clear and convincing as to the relationship and kinship, if any, between said J.D. Casey and the deceased." Casey argues that the proper standard of proof is a preponderance of the evidence.
Section 215 provides four methods for a child born out of wedlock to inherit from its father: (1) the father acknowledges the child as his in a witnessed, signed writing, (2) the parents inter-marry and subsequently the father either acknowledges the child as his or adopts the child, (3) the father publicly acknowledges and receives the child as his own with the consent of his wife if he is married and treats the child as if it were born in wedlock, or (4) there is a judicial determination of paternity before the death of the father.[27] Casey does not argue that his father signed a writing acknowledging him, that his parents intermarried, or that there was a judicial determination of paternity. He does argue that King publicly acknowledged and received Casey as his own with the consent of his wife, or that such consent is not necessary, and treated Casey as if he were born in wedlock. The parties agree that the following five elements are necessary to prove the right to inherit under this provision: (1) out of wedlock birth, (2) paternity, (3) public acknowledgment of the child, (4) reception of the child as his own, with his wife's consent, if married, and (5) treatment of the child as if it were a child born in wedlock. The trial court found that Casey had not proved paternity by clear and convincing evidence. Having found that the burden of proof was not met as to paternity, it was not necessary to address the other elements.
The elements required to inherit pursuant to section 215(c) are the same elements required for "adoption" under title 10, section 55.[28] Therefore, cases construing section 55 are analogous to the present facts. And those cases stand for the proposition that paternity must be proven by clear and convincing evidence, but the remaining elements[29] must be proven by a preponderance of the evidence.[30] Applying those cases to the present facts, we hold that, under section 215(c), paternity must be proven by clear and convincing evidence.
This burden of proof is unchanged by title 10, section 76.1[31] of the Oklahoma Statutes enacted in 1989. Sections 70 thru 90.4 provide a statutory scheme for paternity suits. If paternity is proven, the father then must support and educate the child. Section 76.1 requires that the burden of proof for paternity be the same as the burden of proof for paternity in an *468 action for divorce.[32] The scheme requires that the alleged father "appear and show cause why the court should not determine him to be the father."[33] Failure to appear may result in a finding of paternity. After an appearance and denial of paternity, the court must order blood tests to determine paternity.[34] All of these provisions clearly contemplate that the alleged father is living. Section 215(c) would only be applicable if the alleged father is deceased. Thus, section 76.1 does not affect the burden of proof imposed on children born out of wedlock to prove paternity for inheritance purposes under section 215.
Title 84, section 215 does not violate the equal protection clause of the fourteenth amendment. Further, a claimant under section 215 must prove paternity by clear and convincing evidence. And we agree with the trial court that Casey did not prove paternity by clear and convincing evidence and that the evidence was conflicting and contradictive in nature. Therefore, we affirm the trial court.
CERTIORARI PREVIOUSLY GRANTED. COURT OF APPEALS' OPINION WITHDRAWN AND VACATED. TRIAL COURT AFFIRMED.
HARGRAVE, C.J., OPALA, V.C.J., and LAVENDER and SIMMS, JJ., concur.
DOOLIN, ALMA WILSON, KAUGER and SUMMERS, JJ., dissent.
ALMA WILSON, Justice, dissenting:
I concur in the views expressed in Justice Kauger's dissent. I write separately to express my view that 84 O.S. 1981, § 215 does not require a postmortem paternity proceeding. As the majority opinion states, § 215 provides four methods for proving the right to inherit from a father by a child born out of wedlock. In interpreting the third method for proving the right to inherit in § 215(c), the Court today holds that paternity of the child born out of wedlock must be proved by clear and convincing evidence; and, that the elements specified in § 215(c)  "... (c) the father publicly acknowledged such child as his own, receiving it as such, with the consent of his wife, if he is married, into his family and otherwise treating it as if it were a child born in wedlock ..."  must be proven by a preponderance of the evidence. This holding superimposes an additional, special burden upon the child born out of wedlock to produce clear and convincing evidence of paternity.
The clear legislative purpose of § 215 is to specify the requisites of paternity for purposes of inheritance by a child born out of wedlock. Under § 215, paternity is grounded in the acts of the deceased wherein, during his lifetime, he verbally acknowledged the child as his and he assumed duties attendant to parenthood. The clear legislative intent of § 215(c) is to allow a child born out of wedlock to inherit from his/her father even though, during the lifetime of the father, paternity was not judicially determined nor acknowledged in writing, the father did not marry the mother, and, the father did not formally legitimate the child. Section 215(c) declares that a child born out of wedlock has a right of inheritance from a person who has publicly acknowledged the child as his child and has treated the child as his child. The elements of § 215(c) are the elements of paternity for purposes of inheritance. These elements must be proved by a preponderance of the evidence. The trial court order in this case is clearly contrary to law and should be reversed. Accordingly, I respectfully dissent and join in the dissent by Justice Kauger.
I am authorized to state that KAUGER, J. joins in this dissent.
KAUGER, Justice, with whom DOOLIN, ALMA WILSON and SUMMERS, JJ., join, dissenting:
The primary goal of statutory construction is to ascertain and follow the intention *469 of the Legislature.[1] The majority ignores this maxim and makes an unnecessary venture into constitutional analysis[2] by holding that before a child born out of wedlock may inherit from his/her putative father pursuant to 84 O.S. 1981 § 215,[3] paternity must be established by clear and convincing evidence. I respectfully dissent.

FACTS
A more detailed analysis of the facts than the sparse account given in the majority opinion is necessary to an understanding of this case. On December 10, 1985, while living with the appellee, Jimmy Ray Self (Self), Robert D. (Bunk) King (King) executed a will (King will). Although King had living relatives  three sisters, one brother, and a niece  the only devisees named under the King will are Self, who was named executor, and Charles Hare (Hare)  neither of whom are related to King. King died on February 21, 1986, and five days later, on February 26, 1986, Self petitioned the district court for probate of King's will.
Two of King's sisters, Margaret Tankersley and Vera Dorsey, and a niece, Vera Mangum (collectively, King relatives), filed an objection to the will on March 17, 1986. King's sisters and niece alleged that the will was procured through undue influence and coercion, or, in the alternative, that King lacked capacity to execute a will. The King relatives asserted that Self had previously inherited property from his uncle under questionable circumstances similar to the instant cause. They also alleged that Self had removed King from his home against his wishes, and without notifying any of the his relatives. On April 24, 1986, the trial court admitted the will to probate, finding that King was possessed of testamentary capacity, and that he had not been subjected to duress, fraud, menace, or undue influence at the time the will was executed. Letters testamentary were issued to Self as personal representative on April 28, 1986. The King relatives filed a motion *470 for new trial on May 2, 1986, which was overruled on June 13, 1986. No appeal was taken from this order.
On June 24, 1986, the appellant, J.D. Casey (Casey), filed a petition to set aside the order admitting the King will to probate. Casey alleged that he was a child born out of wedlock, that King was his father, and that he was entitled to the entire King estate. Attached to the petition were four affidavits. In each of these instruments, the affiants affirmed that Casey was the son of King, and that King had publicly acknowledged Casey, had received Casey into his home, and had treated Casey as a child born in wedlock. On August 11, 1986, Casey dismissed without prejudice his petition to set aside the order admitting the King will to probate.
Thereafter, on February 6, 1987, Casey filed an application for determination of heirship as an unintentionally omitted child[4] which was heard on May 28, 1987. Conflicting testimony was presented at the hearing on the issues of Casey's parentage, and King's public acknowledgment of Casey as his son. However, it is undisputed that: 1) Casey was born out of wedlock on January 17, 1948; 2) Casey's mother and King had been intimate during the months prior to Casey's birth; 3) for the first six or seven years of Casey's life, he and his mother lived across the street from King; and 4) although King was married, he and his wife (Pearl) had been separated for a number of years during the marriage.
Hazel Babb, Casey's mother, testified that: King was the father of her son; that she dated only King before her son's birth; that King paid the medical bills when Casey was born; that King provided support for her and her son throughout the years when Casey was growing up; that King bought Casey a motorcycle and acknowledged Casey as his son in his place of business; and that King treated Casey's three children as his grandchildren. She testified that she did not have King's name put on Casey's birth certificate as the father, because at the time Casey was born she was living across the street from King and his wife, Pearl. Pearl's best friend, Louise Burke, testified that she and Pearl had discussed the fact that Casey was King's child. Casey presented seven other witnesses, three of whom were King's relatives by blood or marriage,[5] who testified that King had acknowledged Casey as his son, or that Pearl had told them that Casey was her husband's child. There was also testimony that Pearl had welcomed Casey into her home, and that Casey had eaten meals there prepared by Pearl. Casey testified that he had not seen King in the seven years preceding his death; that he did not know when King died; and he did not attend the funeral.
Self countered Casey's evidence with testimony from King's niece, Vera Mangum, who helped King with his business in the years preceding his death. She stated that King had neither acknowledged Casey as his son nor denied being his father. Self testified that King had indicated that Casey might have been his son. Hare, the other beneficiary under the King will, testified that King had no children. There was also testimony indicating that King was unable to father a child. When the standard forms for King's obituary were completed, the same niece indicated that King had no children. King's insurance agent, who wrote the King will,[6] testified that King had never mentioned a child. He also presented an insurance application in which King indicated that he had never had children.
*471 On June 18, 1987, the trial court denied Casey's application. Although the trial court recognized that there had been an intimate relationship between Casey's mother and King, it found that Casey failed to present clear and convincing evidence that Casey was King's son. Here, Self agrees with the trial court and asserts that the clear and convincing[7] standard of proof should be applied whenever a child born out of wedlock attempts to inherit from his/her father's estate. Casey counters, arguing that a child born out of wedlock may show paternity by a preponderance of the evidence[8] under § 215.[9]
TO INHERIT FROM A FATHER PURSUANT TO 84 O.S. 1981 § 215, A CHILD BORN OUT OF WEDLOCK MUST SHOW PATERNITY BY A PREPONDERANCE OF THE EVIDENCE.
Generally, there are three methods to determine paternity of a child born out of wedlock: 1) through a proceeding to establish paternity brought pursuant to 10 O.S.Supp. 1989 § 70;[10] 2) through a proceeding to establish statutory adoption by acknowledgment pursuant to 10 O.S. 1981 § 55;[11] or 3) through proof established pursuant to 84 O.S. 1981 § 215.[12]

A.

Paternity must be established by a preponderance of the evidence pursuant to 10 O.S.Supp. 1989 § 70.
Although this Court has not determined what degree of proof is necessary under § 215, we have addressed the requisite standard of proof necessary in paternity actions, and in actions to establish statutory adoption. It is well settled in Oklahoma that an action to determine paternity is a civil proceeding, and that a party must prove the cause by a fair preponderance of the evidence.[13]

B.

Paternity must be established by a preponderance of the evidence pursuant to 10 O.S. 1981 § 55.
Although it is well established that paternity actions require a showing by a preponderance *472 of the evidence, our decisions on the degree of proof necessary to establish statutory adoption appear to conflict. Self relies on two decisions  In re Gathings' Estate, 199 Okla. 460, 187 P.2d 981, 984 (1947) and In re Cravens' Estate, 268 P.2d 236, 240 (Okla. 1954)  for the proposition that strict proof[14] is required to establish adoption pursuant to 10 O.S. 1981 § 55. Casey finds support in Thompson v. Thompson, 177 Okla. 437, 60 P.2d 615-16 (1936). Thompson involved a father's statutory adoption of a child born out of wedlock.[15] The only fact at issue in Thompson was whether the child had been received into the family with the wife's consent. The parties were required to show reception by a preponderance of the evidence.
The majority harmonizes these opinions by finding that Cravens' and Gathings' stand for the proposition that paternity must be proven by clear and convincing evidence and that Thompson merely requires that all other elements  out of wedlock birth, public acknowledgment, reception of the child, and treatment of the child as if it were legitimate  be shown by a preponderance of the evidence. No such distinction was made in Thompson. The Court merely stated that the burden had been met on all elements except reception into the family with the wife's consent, and that the proof required is by a preponderance of the evidence. It does not provide, as the majority opinion represents, different standards of proof for the individual elements.[16]
Gathings', Cravens', and Thompson cannot be reconciled in a vacuum as the majority attempts to do. When these cases were decided, there was no controlling legislation concerning the degree of proof necessary to sustain a showing of statutory adoption. In 1989, the Legislature enacted 10 O.S.Supp. 1989 § 76.1[17] which provides that the burden of proof in paternity, support, custody, and visitation actions shall be the same as in an action for divorce. Moreover, in Chamberlain v. Chamberlain, 121 Okla. 145, 247 P. 684, 686 (1926) and Hartshorn v. Hartshorn, 67 Okla. 45, 168 P. 822-23 (1917), we determined that grounds for divorce must be proven by a fair preponderance of the evidence. A showing under § 55 of a father's statutory adoption is one way to establish paternity. The Legislature spoke on the requisite degree of proof necessary to establish paternity with its enactment of § 76.1. To establish paternity pursuant to § 55, a child must show statutory adoption by a preponderance of the evidence.
The majority finds that § 76.1 is inapplicable to an action by a child born out of wedlock to establish paternity for inheritance purposes. In so doing, the majority ignores the plain language of the statute which provides that the burden of proof in a paternity action "shall be the same as in an action for divorce." This it is not free to do.[18]

*473 C.

Paternity must be established by a preponderance of the evidence pursuant to 84 O.S. 1981 § 215.
Actions brought pursuant to § 215 are brought for the purpose of establishing paternity just as are actions associated with statutory adoption. Although § 76.1, providing for a showing of paternity by a preponderance of the evidence, was not enacted until two years after the instant cause was filed, even before § 76.1's enactment, the Legislature had indicated that the degree of evidence necessary to establish paternity under § 215 should be by a preponderance of the evidence. On December 7, 1976, this Court promulgated Estate of Benson, 558 P.2d 384, 387 (Okla. 1976) holding that an adjudication of paternity did not create a right to inheritance pursuant to 84 O.S. 1971 § 215.[19] The Legislature responded by amending § 215 and adding subsection (d). Subsection (d) provides that a child born out of wedlock inherits from his/her father if the father has been judicially determined to be the parent in a paternity proceeding.[20] By adding subsection (d) to § 215, the Legislature overruled Benson by statute, and incorporated a method which requires a showing of paternity by a preponderance of the evidence.[21]
Relevant portions of a statute and related enactments should be considered together to give force and effect to all of them.[22] The Legislature enumerated four avenues under § 215 through which a child born out of wedlock may show paternity: 1) a written acknowledgment by the father, 2) intermarriage of the child's parents and acknowledgment by the father, 3) public acknowledgment and receiving the child into his family, or 4) a judicial order of paternity. The degree of proof required in paternity and statutory adoption proceedings is proof by a preponderance of the evidence. By assuming that the Legislature requires stricter standards for one method of showing legitimation under § 215 than other methods, the majority creates an internal inconsistency within the statute,[23] and ignores the Legislature's mandate that proof of paternity is to be by a preponderance of the evidence.

CONCLUSION
The policy of the law has always been to favor legitimization of children.[24] The Legislature *474 has chosen to further this policy by abolishing the terms "illegitimate" and "bastard" in statutory enactments and substituting the term "child born out of wedlock";[25] by decreeing that all children are legitimate;[26] and by adopting the traditional degree of proof  by a preponderance of the evidence  for a showing of paternity. Certainly proof of paternity is required; however, the standard is not so strict that it results in those with worthy claims being denied recovery. Considering the legislative posture, it is incongruous to require a higher degree of proof than a preponderance of the evidence to establish paternity pursuant to 84 O.S. 1981 § 215. Because the trial court applied a higher degree of proof than was required for the showing of paternity, the cause should be remanded.
NOTES
[1] Okla. Stat. tit. 84, § 215 (1981) provides:

For inheritance purposes, a child born out of wedlock stands in the same relation to his mother and her kindred, and she and her kindred to the child, as if that child had been born in wedlock. For like purposes, every such child stands in identical relation to his father and his kindred, and the latter and his kindred to the child, whenever: (a) the father, in writing, signed in the presence of a competent witness acknowledges himself to be the father of the child, (b) the father and mother intermarried subsequent to the child's birth, and the father, after such marriage, acknowledged the child as his own or adopted him into his family, (c) the father publicly acknowledged such child as his own, receiving it as such, with the consent of his wife, if he is married, into his family and otherwise treating it as if it were a child born in wedlock, or (d) the father was judicially determined to be such in a paternity proceeding before a court of competent jurisdiction.
[2] Reed v. Campbell, 476 U.S. 852, 854, 106 S.Ct. 2234, 2236, 90 L.Ed.2d 858 (1986); Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978); Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977).
[3] 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977).
[4] The statute being challenged in Trimble provided:

An illegitimate child is heir of his mother and of any maternal ancestor, and of any person from whom his mother might have inherited, if living; and the lawful issue of an illegitimate person shall represent such person and take, by descent, any estate which the parent would have taken, if living. A child who is illegitimate whose parents inter-marry and who is acknowledged by the father as the father's child is legitimate.
Ill. Rev. Stat. ch. 3, para. 12 (1973).
[5] Trimble, 430 U.S. at 763, 97 S.Ct. at 1461 (citing Ill. Rev. Stat. ch. 3, para. 2-1(b) (1976)).
[6] Id. at 770, 97 S.Ct. at 1465.
[7] Id. at 772-73, 97 S.Ct. at 1466.
[8] Id. at 771, 97 S.Ct. at 1465.
[9] Id. at 767, 97 S.Ct. at 1463.
[10] Id. at 770, 97 S.Ct. at 1465.
[11] 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978).
[12] The New York statute under attack in Lalli provides:

(a) For purposes of this article:
(1) An illegitimate child is the legitimate child of his mother so that he and his issue inherit from his mother and from his maternal kindred.
(2) An illegitimate child is the legitimate child of his father so that he and his issue inherit from his father if a court of competent jurisdiction has, during the lifetime of the father, made an order of filiation declaring paternity in a proceeding instituted during the pregnancy of the mother or within two years of the birth of the child.
(3) The existence of an agreement obligating the father to support the illegitimate child does not qualify such child or his issue to inherit from the father in the absence of an order of filiation made as prescribed by subparagraph (2).
(4) A motion for relief from an order of filiation may be made only by the father, and such motion must be made within one year from the entry of such order.
(b) If an illegitimate child dies, his surviving spouse, issue, mother, maternal kindred and father inherit and are entitled to letters of administration as if the decedent were legitimate, provided that the father may inherit or obtain such letters only if an order of filiation has been made in accordance with the provisions of subparagraph (2).
N.Y. Est. Powers & Trusts § 4-1.2 (McKinney 1967).
[13] Lalli, 439 U.S. at 268, 99 S.Ct. at 525.
[14] Id. at 271, 99 S.Ct. at 526 (citing Fourth Report of the Temporary State Commission on the Modernization, Revision and Simplification of the Law of Estates, Legis. Doc. No. 19 at 265 (1965)).
[15] Id. at 268-69, 99 S.Ct. at 525.
[16] Id. at 271, 99 S.Ct. at 526.
[17] Id. at 275-76, 99 S.Ct. at 528.
[18] 476 U.S. 852, 106 S.Ct. 2234, 90 L.Ed.2d 858 (1986).
[19] Id. at 852-53, 106 S.Ct. at 2235-36 (citing Tex. Prob. Code Ann. § 42 (Vernon 1956)).
[20] Id. at 856, 106 S.Ct. at 2237.
[21] Id. at 855, 106 S.Ct. at 2237.
[22] Id.
[23] Lalli, 439 U.S. at 276, 99 S.Ct. at 528.
[24] See, Trimble, 430 U.S. at 773-74, 97 S.Ct. at 1466-67; Lalli, 439 U.S. at 268, 273, 99 S.Ct. at 525, 527; Reed, 476 U.S. at 855, 106 S.Ct. at 2237.
[25] Reed, 476 U.S. at 855, 106 S.Ct. at 2237.
[26] Trimble, 430 U.S. at 771, 97 S.Ct. at 1465.
[27] Okla. Stat. tit. 84, § 215 (1981).
[28] Okla. Stat. tit. 10, § 55 (1981) provides:

The father of an illegitimate child by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such, and such child is thereupon deemed for all purposes legitimate from the time of its birth. The status thus created is that of a child adopted by regular procedure of court.
[29] The remaining elements are: (1) out of wedlock birth, (2) public acknowledgement of the child, (3) reception of the child as his own, with his wife's consent, if married, and (4) treatment of the child as if it were a child born in wedlock. Id.
[30] In re Cravens' Estate, 268 P.2d 236, 240 (1954) (Paternity requires strict proof.); In re Gathings' Estate, 199 Okla. 460, 187 P.2d 981, 984 (1947) (Paternity requires strict proof. Thereafter, "the statute should be liberally construed."); Thompson v. Thompson, 177 Okla. 437, 60 P.2d 615, 616 (1936) (Consent of the wife must be shown by a preponderance of the evidence.).
[31] Okla. Stat. tit. 10, § 76.1 (Supp. 1989) provides:

The issues of paternity, support, custody and visitation shall be tried before a judge of the district court and the burden of proof and procedure shall be the same as in an action for divorce.
[32] Grounds for divorce must be proven by a preponderance of the evidence. See Chamberlain v. Chamberlain, 121 Okla. 145, 247 P. 684 (1926); Hartshorn v. Hartshorn, 67 Okla. 45, 168 P. 822 (1917). Neither Chamberlain nor Hartshorn involved paternity.
[33] Id. at § 77.1.
[34] Id.
[1] Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Comm'n, 764 P.2d 172, 179 (Okla. 1988); Fuller v. Odom, 741 P.2d 449, 452 (1987).
[2] Although I have no quarrel with the way that the United States Supreme Court has analyzed paternity cases, because the proper degree of proof under § 215 is a preponderance of the evidence rather than the standard of clear and convincing evidence utilized by the trial court, it is unnecessary to address the constitutional challenges to 84 O.S. 1981 § 215, see note 3, infra and 10 O.S. 1981 § 55. Title 10 O.S. 1981 § 55 provides:

"The father of an illegitimate child by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such, and such child is thereupon deemed for all purposes legitimate from the time of its birth. The status thus created is that of a child adopted by regular procedure of court.
The foregoing provisions of this article do not apply to such an adoption."
The Court of Appeals reversed the trial court holding that 84 O.S. 1981 § 215, see note 3, infra, was unconstitutional because it denied equal protection to nonconnubial children in probate cases involving paternity and the right of inheritance by intestate succession. It remanded with instructions for a new trial to establish paternity by a preponderance of the evidence. We granted certiorari on December 12, 1989, to consider a question of first impression.
This issue of whether the different standards set forth in 84 O.S. 1981 § 215, see note 3, infra, for inheritance through maternal and fraternal lines violates either the Oklahoma or United States Constitutions is not here.
[3] Title 84 O.S. 1981 § 215 provides:

"For inheritance purposes, a child born out of wedlock stands in the same relation to his mother and her kindred, and she and her kindred to the child, as if that child had been born in wedlock. For like purposes, every such child stands in identical relation to his father and his kindred, and the latter and his kindred to the child, whenever: (a) the father, in writing, signed in the presence of a competent witness acknowledges himself to be the father of the child, (b) the father and mother intermarried subsequent to the child's birth, and the father, after such marriage, acknowledged the child as his own or adopted him into his family, (c) the father publicly acknowledged such child as his own, receiving it as such, with the consent of his wife, if he is married, into his family and otherwise treating it as if it were a child born in wedlock, or (d) the father was judicially determined to be such in a paternity proceeding before a court of competent jurisdiction.
For all purposes, the issue of all marriages null in law, or dissolved by divorce, are deemed to have been born in wedlock."
[4] Title 84 O.S. 1981 § 132 provides:

"When any testator omits to provide in his will for any of his children, or for the issue of any deceased child unless it appears that such omission was intentional, such child, or the issue of such child, must have the same share in the estate of the testator, as if he had died intestate, and succeeds thereto as provided in the preceding section."
[5] One of these witnesses was King's sister who had testified at the original will contest that King's only heirs were his brothers and sisters.
[6] The King will was executed while King was living in the home of Self. At the same time that King was residing with Self, Hare had taken up residence in King's home.
[7] Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegation sought to be established. In the Matter of C.G., 637 P.2d 66, 71 (Okla. 1981). The standard requires a higher degree of proof than a preponderance of the evidence. It is an intermediate standard falling between a preponderance and proof beyond a reasonable doubt. American Cyanamid Co. v. Electrical Indus., 630 F.2d 1123, 1127 (5th Cir.1980); Alexander v. Warren, Arkansas, School Dist. No. 1 Bd., 464 F.2d 471, 474 (8th Cir.1972); Succession of Bartie, 472 So.2d 578, 582 (La. 1985).
[8] Preponderance of the evidence is the lowest degree of proof known to the law. Arco Metalscraft Co. v. Shaw, 364 Pa. 39, 70 A.2d 850, 853 (1950). It does not mean the greater number of witnesses testifying to a fact but means that which, to the mind of the trier of fact or the seeker of the truth, seems most convincing and more probably true. Marshall v. Amos, 471 P.2d 896, 905 (Okla. 1970); Morris v. Leverett, 434 P.2d 912, 924 (Okla. 1967); Peyton v. McCaslin, 417 P.2d 316, 321-22 (Okla. 1966).
[9] Title 84 O.S. 1981 § 215, see note 3, supra.
[10] Title 10 O.S.Supp. 1989 § 70 provides in pertinent part:

"Proceedings to establish paternity may be brought:
1. in district court by civil proceedings brought by the mother, the father, guardian or custodian of the child, the Department of Human Services, the district attorney, a public or private agency or authority chargeable with the support of the child, or by the child... ."
[11] Title 10 O.S. 1981 § 55, see note 2, supra.
[12] Estate of Benson, 558 P.2d 384, 389 (Okla. 1976) (Doolin, J., dissenting), in which Justice Doolin states that § 215 provides one method of proving paternity. This position was adopted by the Legislature in 1977 with the addition of subsection (d) of § 215, see note 3, supra, providing that a child born out of wedlock may inherit from his/her father when paternity has been established before a court of competent jurisdiction.
[13] Leach v. State, 398 P.2d 848, 851 (Okla. 1965); McKiddy v. State, 366 P.2d 933, 935 (Okla. 1961); Buck v. State, 206 Okla. 71, 241 P.2d 191 (1952); Roberts v. State, 205 Okla. 632, 240 P.2d 104, 106 (1951); Boston v. State ex rel. Mayberry, 182 Okla. 181, 77 P.2d 13-14 (1938); Greenback v. State, 169 Okla. 616, 36 P.2d 882-83 (1934); Miller v. State, 156 Okla. 253, 10 P.2d 697 (1932); Jones v. State, 152 Okla. 139, 4 P.2d 85-86 (1931); Powelson v. State, 69 Okla. 72, 169 P. 1093-94 (1917); Libby v. State, 42 Okla. 603, 142 P. 406-07 (1914).
[14] Strict proof requires proof by a preponderance of the clear and positive proof. Sherman v. Goloskie, 95 R.I. 457, 188 A.2d 79, 84 (1963). Presumably, "strict proof" falls somewhere between the degrees of preponderance of the evidence and clear and convincing evidence.
[15] The statute under consideration in Thompson v. Thompson, 177 Okla. 437, 60 P.2d 615, 616 (1936), Okla. Stat. § 1715 (1931), is virtually identical to 10 O.S. 1981 § 55, see note 2. It provides:

"The father of an illegitimate child by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such, and such child is thereupon deemed for all purposes legitimate from the time of its birth. The status thus created is that of a child adopted by regular procedure of court.
The foregoing provisions of this article do not apply to such an adoption."
[16] Nothing in the language of § 215 indicates, as the majority has judicially legislated, that "paternity must be proven by clear and convincing evidence, but the remaining elements must be proven by a preponderance of the evidence."
[17] Title 10 O.S.Supp. 1989 § 76.1 provides:

"The issues of paternity, support, custody and visitation shall be tried before a judge of the district court and the burden of proof and procedure shall be the same as in an action for divorce."
[18] State v. Sims, 690 P.2d 1052, 1054 (1984); Allgood v. Allgood, 626 P.2d 1323, 1327 (1981).
[19] Title 84 O.S. 1971 § 215 provides:

"Every illegitimate child is an heir of the person who in writing, signed in the presence of a competent witness, acknowledges himself to be the father of such child; and in all cases is an heir of his mother; and inherits his or her estate, in whole or in part, as the case may be, in the same manner as if he had been born in lawful wedlock; but he does not represent his father or mother by inheriting any part of the estate of his or her kindred, either lineal or collateral, unless before his death his parents shall have intermarried, and his father after such marriage, acknowledges him as his child, or adopts him into his family; in which case such child and all the legitimate children are considered brothers and sisters, and on the death of either of them, intestate, and without issue, the others inherit his estate, and are heirs, as hereinbefore provided, in like manner as if all the children had been legitimate; saving to the father and mother respectively, their rights in the estates of all the children in like manner as if all had been legitimate. The issue of all marriages null in law, or dissolved by divorce, are legitimate."
[20] Title 84 O.S. 1981 § 215, see note 3, supra. See also, Note, "Protecting the Illegitimate's Right to Inherit," 6 Okla. City U.L.Rev. 469, 486-87 (1981).
[21] Leach v. State, see note 13, supra; McKiddy v. State, see note 13, supra; Buck v. State, see note 13, supra; Roberts v. State, see note 13, supra; Boston v. State ex rel. Mayberry, see note 13, supra; Greenback v. State, see note 13, supra; Miller v. State, see note 13, supra; Jones v. State, see note 13, supra; Powelson v. State, see note 13, supra; Libby v. State, see note 13, supra.
[22] Anderson v. Dyco Petroleum Corp., 782 P.2d 1367, 1376 (Okla. 1989); Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Comm'n, see note 1, supra; AMF Tubescope Co. v. Hatchel, 547 P.2d 374, 379 (Okla. 1976).
[23] See, Note, "Inheritance by and From Illegitimate Children," 3 Okla.City U.L.Rev. 439-40 (1978), in which the author states that the same proof of legitimacy that would satisfy the requirements of the § 215 would also satisfy § 55.
[24] Matter of Swarer, 566 P.2d 126-27 (Okla. 1977); In re Estate of LaSarge, 526 P.2d 930, 932 (Okla. 1974); Colpitt v. Cheatham, 267 P.2d 1003, 1007 (Okla. 1954).
[25] Title 10 O.S. 1981 § 1.1 provides:

"Wherever reference is made in the Oklahoma Statutes to `illegitimate' or `bastard' it shall be deemed to refer to a `child born out of wedlock.'"
[26] Title 10 O.S. 1981 § 1.2 provides:

"On and after the date this act becomes operative, all children born within the State of Oklahoma shall be legitimate."